We are moving for the 9th Circuit to review the Board of Immigration Appeals of the Immigration Judges decision regarding a Kaur's application for asylum withholding a removal and withholding a removal under Article 3 of the Commission's Torture Act. We believe that the Board of Immigration Appeals of the Immigration Judge urgently denied these applications of the petitioner based on credibility. We ask the Court to review the credibility findings. We also ask the Court to review what we believe was an error by the Immigration Judge in regards to not considering Exhibit 4, which was submitted to the Court by the petitioner. So the Court of Application for Asylum Withholding a Removal Act Could you please remind me what Exhibit 4 was? Exhibit 4 was a letter from the All Indian City Student Federation which stated that Mrs. Kaur is a member of that organization. There was also an affidavit from her father and herself. Were those affidavits admitted? Yes. They were admitted for identification. However, they were found to be... Let me stop you. This is Judge Wu. The Exhibit 4, basically, there was one line which indicates she was a member. Was that even disputed, that she was a member? Yes, Your Honor. There was a dispute as to the credibility of the fact... Well, there was a dispute as to credibility, but was there a dispute as to her membership? It's hard to... If I may look at the Judge's decision, what was found was that the documents were unreliable and unworthy of credence. The testimony was discredited because of alleged minor inconsistencies between the petitioner's testimony and statements. And the Judge did not specifically state whether she was a member or not, whether she questioned that, but basically used the fact that those documents, which consisted of also her affidavit and her father's affidavit, to the courts complaining against the petition that she received from the Indian Police as a result of her membership in the All Indian City Student Federation, that those documents were not, if you look at them, were not admissible for the purposes of the jeopardy of credibility. Mr. Patabusi, this is Judge Smith. These cases tend almost always to involve difficult credibility issues, but the thing that struck me about this case, and which I'm hoping you'll be able to clarify, you have two very important issues that your client would have been in a position to easily prove and did not do so. One of them is that her father, who is the person who could have verified the accuracy of everything substantive in the issue, was in the United States, was available. She said he was working, but did not show up, was asked about that. Why didn't he come to the hearing, since it was so important? Well, Your Honor, I wasn't the attorney on the actual hearing before the integration, Judge, but from my discussions with my client, was that he was working, and there was no time given to that attorney to, per se, return the hearing, to allow for them to bring the father in. That was never worked out. The judge basically stated that because he's not there, that they're not going to look at the affidavit, Your Honor. Affidavit arguments on credibility in immigration proceedings due to unavailability of witnesses. Well, that's true. Witnesses aren't available because they're in a different country. Yeah, but I've got to say, in this case, though, this gentleman was in the same vicinity. Well, let's put that aside for the moment. The second one, this young woman alleged that she had been raped and otherwise treated in a horrible manner, but that she had filed a petition regarding the rape in a court in India. That is a matter of public record. And she was asked where the allegation, the complaint was, and indicated that she didn't get it because she was afraid someone would know that she had taken it and it would create harm. Obviously, some real credibility issues there. Why was that not produced? Well, exactly for the reason that she stated it. She was afraid to try to get it. Why would there have been any harm? This is somewhat analogous to our system. She didn't even have to go down herself. She could have sent somebody else down. She could have had a messenger service go down and get a copy of the alleged complaint. The answer, Your Honor, to my client was that there was a fear. A fear about what? Anybody who she had to go out and get a copy of this complaint. But does that not, though, go to the credibility of the witness? I mean, you've got her father, who has all of the evidence necessary to corroborate her story, does not show up, even though the IJ, as I understand it, asked about that. And I think there was a previous continuance, if I recall correctly. You also have the complaint, which was asked about. And the fear, I think the IJ is entitled to take that into account of whether or not what was alleged is credible. Is he not? Yes, Your Honor. You're absolutely correct. He is supposed to take that into account. But he is also supposed to take into account what it states goes to particular affidavits, which she is not meant to take into consideration that I did produce these affidavits to the court. It's a little bit of a different situation, Your Honor, in India than it is in the United States, where public records are available, when you're dealing with situations which the government has in the past tried to hide, and the government has tried to hide, as we put the country before you, and so forth. But is there any evidence in this case that this petitioner or someone on her behalf tried to get something and could not find it because it was being hidden? Now, that would be a different issue. But there's no such evidence in this case, is there? At the present time, Your Honor, there is no such evidence. Was there ever a plea for peace that actually started the case? If I can follow up, this is Judge Fletcher, follow up Judge Smith's question. When asked as to why some record of this complaint wasn't obtained, her first answer was she did not want to endanger her parents. But her parents, she was then reminded, were already in the United States. She then changes her answer to say, well, I didn't want to endanger my brothers. But endangering parents, brothers, or herself seems in a way odd, because her basic narrative is that because she filed the complaint, there had been retaliation against her. So it's known that she filed the complaint, and the only issue would be that somebody asks for a copy of it. So they're only drawing attention to the fact that she wants a copy. It just doesn't make a lot of sense to me that there would be additional danger from asking for a copy when the fact of the filing is already known and indeed is part of her underlying narrative as to why she should get asylum. Can you respond to that? Your Honor, I believe that, again, you're asking me to look into the mind of my client. Yes, I am. To explain to you things that are stated above and beyond what's in the testimony. But I believe that her testimony shows that there is a general fear within her and her family to reawaken the situation, to reawaken the position. As you know, right now in India, there seems to be a struggle between the Sikhs and the Hindus as to the formation of a world independent country known as the United States. Counsel, counsel, this is judgment. Isn't your best argument simply that corroborating evidence is not required unless there is a doubt as to credibility? And in this particular situation, her testimony was sufficient. That is your best argument, isn't it? Yes, Your Honor. And therefore, let me stop you, counsel. Counsel. Counsel. Counsel. Counsel, you're not doing a good job. But isn't the problem with your position, however, is there is this one case, Sidhu v. INS 225, 1085, which chips away at that situation and does say that even though credibility may not be in doubt necessarily, the court can still require corroborating evidence. Isn't that a fact? Yes, Your Honor. So how do you get around that case? I believe that the corroborating evidence was the affidavits that were presented. That was the letter from the All-Indian Sikh Student Federation. But unfortunately, that wasn't really the issue. And you talked about her father's affidavit. Her father's affidavit, she already indicated she couldn't verify that that was the one that he had submitted. Isn't that correct? She did state that she had received it from her father in advance. She did state that very clearly. Okay. Well, you've used up all your time. Let's hear from the government, but we will give you a minute to respond after we have heard from the government. Thank you, Your Honor. Thank you for your hearing. Of course. Good morning. We can hear you. Okay, good. May it please the Court, my name is Sarah Vong, and I'm representing the Attorney General of the United States. Substantial evidence supports the agency's decision in this case in finding Petitioner Carr adversely credible. Let me ask you a quick question. Your footnote number one indicates that supposedly there was obviously a change in the standard in regards to corroborating, well, the proof elements in this area under the Real ID Act. And you indicated that in footnote one that even though the provisions don't apply to cases that were filed prior to the Act, which this one was, you indicate that in the last sentence, the amendment to 8 U.S.C. Section 1252b-4 regarding corroborating evidence, however it does apply, you just cite to the CID Act. Isn't that wrong as a matter of law in this circuit? I'm actually not sure about that, Your Honor. I do not know if the Real ID Act made the corroboration requirements retroactive. Well, this Court has held that it's not retroactive, hasn't it, in at least two cases? I'm sorry, Your Honor, I'm not prepared on that issue. Okay, well, fine. I apologize. I can submit supplemental documentation if you would like that. Well, look at Lee v. Holder, 629 Fed 3rd at 1154. Okay. And also the Joseph K. 600 Fed 3rd, and that would be at footnote 8 on page 1246. Okay. Thank you, Your Honor. What we do argue, though, is, as you cited previously, is the CID Act. Actually, I'm not going to take this off of your time. See that silver handle on the side? Yeah, turn that. I bet that's going to let that come up. We're about to get some technical help. Okay. Try that. Can you hear me now? Not very well. We can hear you, but it's not amplifying, so I think it's probably... Horizon net. Yeah. There we go. I can hear myself. Can we hear you? Try that again. Can everyone hear me now? Okay. Thank you. Is that better? Yes. Okay. That does not come off of your time. Okay. Here we go. I will cut back. The petitioner in this case does carry the burden of proof in proving her credibility before the immigration judge and the Board of Immigration Appeals, and in this case she did not meet that burden. The immigration judge found that there were inconsistencies in her testimony before, both her and the asylum officer. What were the inconsistencies? Regarding her voting in both 1998... Why is that significant? I think it's very significant for an immigration judge to take a petitioner's testimony into account regarding her voting when her argument is based off of her... If somebody in this country said they were a Democrat or Republican, but they didn't vote in the last election, you'd say I have a doubt as to whether or not they're a Democrat or a Republican? It's reasonable for the immigration judge to take this question into account when the petitioner's entire application is based off of her political activity. No, it was based upon the perception of law enforcement there in India as to her political activity. Yes, sir, but the officers did come and arrest her from her... purportedly arrested her from her house after she had fed other members of the AISSF, the All India Sikh Student Federation, and was providing posters and pamphlets, I believe, for money. So it was after that that she was arrested. But after she was assaulted and raped and she didn't vote after that, you're saying that that goes towards her credibility? Yes, sir, because she also stated she continued her activities in trying to get a free calisthene secretly. Voting goes to the heart of the claim, and this court has held that... Do you know whether or not in India there are poll people at the voting areas to watch people who vote? I'm sorry, I don't believe that information is in this record. Did the immigration judge reference that? No, she did not. However, the immigration judge did find she questioned petitioner about these inconsistencies. Petitioner was unable to provide a clear answer from her testimony before the asylum officer and before the immigration judge. Let me pursue this a little bit, if I may. Under the law prior to the Real ID Act, which I gather applies to this case... Yes, it does. Inconsistencies on questions that don't go to the heart of the claim we don't pay much attention to. And you're well aware of that because you just said this does go to the heart of the claim. I have trouble seeing how this goes to the heart of the claim. The narrative that she puts forward that is the heart of the claim is she was engaged in activity in sort of the Free Khalistan Movement, feeding these people, doing posters, and so on. The police come, they arrest her, they then beat her, two of them then rape her, they require a large bribe of 100,000 rupees before she's released, and so on. That seems to me the heart of the claim. Whether she voted or not, I mean, who cares? And it is still reasonable, though, for the immigration judge to take these activities into account and not really know what petitioner has testified to. Well, I understand that I.J. was concerned about this. It may very well be that she was having trouble answering, and it may very well be that she wasn't telling the truth. But tell me why that voting question goes to the heart of her claim. The argument we put forward is that because she was such a, and she testified that she was an activist for Khalistan, and voting is how Khalistan was meant to come about, the fact that she did not vote to get this free country that was her very serious political opinion goes to the heart of the claim that she could not then remember before the asylum officer or the immigration judge why she didn't vote. And she seems to be wavering in her testimony as if she believes that this should be an important question that she should be able to answer but cannot. If we find that the voting issue does not go to the heart of the claim, is there sufficient evidence with regard to the other matters that were discussed earlier to sustain the decision of the I.J. and the BIA? Yes, there is. As you've already noted, she did not bring her father to testify, who was located in Fremont, California. Did she testify that her mother was ill as well as the fact that her father was working? Yes, she did. Her mother was ill. Couldn't an argument be made that the immigration judge should have given her an opportunity to provide her father when it became clear, at least to the immigration judge, that that immigration judge had some questions about her credibility? The hearing had been calendared for three months and the petitioner did not request any sort of continuance. I believe this court in situ did remand to provide time to bring the corroborating witness, but situ, I believe, was ruled on in 2001, and so she and her attorney at the time were on notice that she should bring. But she came forward at that point in time with affidavits and other materials, and so why wouldn't that have been sufficient, at least was it unreasonable for her to assume that would be sufficient? Because there is a long line of Ninth Circuit cases that indicate that kind of that is sufficient and that one shouldn't be surprised in terms of a credibility determination without some advance warning of some sort. Well, the judge did hold that the affidavits were not properly authenticated and therefore unworthy of credence in themselves. Her father was unauthenticated. There's dialogue in the record regarding the originals for all of the affidavits. The originals were never presented and the petitioner could not provide a clear reason as to why she did not have the originals. Regarding the AISSF letter, she stated that she had to... As far as her own declaration is concerned, why couldn't she verify that that declaration was hers? She could have and the I.J. can use testimony to authenticate a document. However, the I.J. is not required to use such testimony and in this case it was not until it was suggested by her own attorney that she had given her original to the CBI inspector that she agreed, oh yes, that is why I don't have the original. Although I don't think it makes much difference whether her affidavit is admitted because she's there testifying and in fact her affidavit, much of it is word for word the same as her formal written application. So I mean the information that's contained in that affidavit that she prepared is essentially duplicative of information that we have elsewhere and indeed word for word for much of it in her written application. Yes, that is correct and also I believe we noted in a footnote there are slight inconsistencies between the affidavits which are in the record for identification purposes only regarding her age and their age. I have trouble with this case for some of the reasons that we're going over because ordinarily the way an adverse credibility finding is supported is for the I.J. to find inconsistencies in the testimony or inconsistencies in the evidence and the I.J. had to work pretty hard to find inconsistencies. The I.J. could find that she really wasn't quite sure as to why she voted, her stories kind of wandered a little bit. The I.J. was able to say, well you first answered that your parents would be endangered if you want to look for the information about the suit filed, supposedly filed in the Indian Supreme Court and she then corrects it to the brother. But it's pretty thin gruel frankly. I think the I.J. just didn't believe her because the story doesn't, I mean the story that she tells and this is, I mean this is just her story, she comes to the United States hoping to marry someone who is a United States citizen and it shows up in her written statement that this United States citizen turns out to be a really lousy prospect for a husband. He's got terrible tax problems and he asks her parents to pay some $27,000 of his past tax liability, which they do. Then he wants more money of his past liability and they pay that and then he wants more money and they finally say, you know, what the heck with it. And then she files for asylum. Yes. Now that's not an inconsistency with her story as to what happened, but it nonetheless makes me a little suspicious that, well they'd hoped to get her married to a United States citizen, the parents, and they did a lot for her, but that then wasn't going to work out and this is the fallback. Do I even get to consider that as part of my understanding of the case as I'm trying to decide whether or not to sustain the adverse credibility finding? Yes, it is in the record as you noted. I know it's in the record, but is it something that is appropriate for me to consider? The only reason I know it is because it's in the record. The IG and the agency did not necessarily state that in their decisions. However, a credibility finding, even pre-real ID, can look at all of the facts in the record and the testimony within. But don't we decide the decision, maybe make the decision on the basis of what they did say not on what they didn't say? Well, yes, Your Honor. However, these facts are all there and you can look at it in the context. And may I also point to Sidhu, I believe, to go to Judge Smith's question earlier. In Sidhu, the BIA did look at inconsistencies. They boiled it down to two, a date of entry of the father in that petitioner's case and the lack of easily available non-duplicative material corroborating evidence. They found that the first inconsistency was minor and they still found the petitioner in that case to be incredible because he did not bring his father. And the facts in this case very closely track that. Her father was about an hour away. He was an LPR citizen. He was the only person at some of the events when the police officers came back to her house. This case largely hangs on Sidhu. Yes, sir, it does. I believe my time is up. No, no, dear, you're in the red. You owe us two minutes and 15 seconds. I think we have your position well in hand. Okay, thank you so much. We've taken the government over by two minutes. Would you like two minutes to respond? Yes, Your Honor. Just briefly on the voting issue, Your Honor, Mrs. Hart testified clearly that she was a member of the All-Against-Eastern Federation. That led to her being a part of that political group, to placing posters, going to rallies, and so forth, and really wasn't based on whether she had voted or had not voted in the actual elections. Her claim was based that because she was a member of the All-Against-Eastern Federation, she was arrested, illegally detained, beaten, raped, and assaulted. Therefore, I don't believe that the voting, just as Your Honor has stated, is an inconsistency related to the heart of the claim, as we stated in our brief. Mr. Potavuzi, let's assume for a moment we agree with you about the voting, but I ask opposing counsel whether the case turns on the situ reasoning. Do you agree with that? Does it turn on the situ? Yep. Your Honor, I do agree in a way. Yes, I do. But I also believe that we really can't look at the previous brief that Mrs. Hart had sought to determine whether it was a final claim, a real claim. And also, I also believe that testimony, that's one thing. I'm sorry, Your Honor. I've got to say, that's not the basis. It specifically has to do with corroboration. That's correct, exactly. I apologize to the Court, this is my first time appearing before you, so I may be a little bit not correct in the way that I'm addressing the Court, and I apologize. No, you're doing fine. But I've got a question that ties into Judge Smith's question. Yes. I understand you weren't the lawyer at that time. Did your client make any motion to reopen in front of the IJ in order to introduce testimony from the father? No, I did not make a motion. So even after getting the oral decision from the IJ saying, I needed the father to be here, even then there's not a motion to reopen to bring in the father? No, there was not, Your Honor. But, counsel, didn't your client indicate then for itself, there is no need for, like we just stated, the Real I.D. Act is when it began, the Real I.D. Act was actually brought in action and took effect. That is when the courts require corroborating evidence. In her case, corroborating evidence is not required. It is sufficient, credible, which is what we believe. Would it have been a good idea to bring a motion to reopen to see if we can bring the father? Absolutely. But by the time that, again, it's by the time it got to us, it had already gone through the DIA. Okay, good. We've now taken you even over your two minutes. Thank you very much for your argument. No, no, not your fault at all. We very much appreciate your argument, and we very much appreciate your appearing by telephone. The case is now submitted for decision.
judges: Wu, Fletcher W. , Smith M.